UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 2:19-CR-196 |
| v. | ) |
| | ) JUDGE GREER |
| VICTOR JAMES RAY | ) |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Victor James Ray, and the defendant's attorney, Jerry Fabus, Jr., have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

   a) Count One, that is, conspiracy to distribute fifty grams or more of methamphetamine, its salts, its isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).

   The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, a minimum of five years up to life on supervised release, and a $100.00 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant was a member of a drug trafficking organization led by co-defendant Joshua Davis during the time frame set forth in the indictment.

On February 25, 2018, a Kingsport Police Officer was patrolling the area of 735 Howard Street, Kingsport, Tennessee, due to reports of drug activity. The officer observed Defendant outside working on a car and knew that Defendant had an active warrant for his arrest through the Hawkins County, TN, Sheriff's Office. The officer searched Defendant's person incident to arrest and located approximately 1.5 grams of methamphetamine in a baggie in Defendant's right front pocket. Defendant was transported to the Kingsport Police Department for booking and processing.

On September 3, 2018, the Kingsport Vice and Narcotics Unit conducted a controlled purchase of methamphetamine from co-defendant Brittany Sage. The Vice and Narcotics unit utilized a Confidential Informant (CI) to arrange and make the purchase. Sage agreed to sell the CI a gram of methamphetamine for $70. Sage requested the CI come to 735 Howard Street, the residence of Defendant to make the purchase. Sage stated that the CI needed to park away from the residence and walk to the house. The CI arrived at the residence and met with Sage and Defendant. The CI told law enforcement that Defendant was upset that the CI walked up to the house and stated that it looked suspicious and would attract law enforcement attention. Defendant told the CI to drive to the house next time. The CI successfully purchased the methamphetamine from Sage and left the residence.

On September 7, 2018, Defendant sent a text message to co-defendant Larry Hawkins, to let Hawkins know that he could provide methamphetamine to him.

2

On September 4, 2018, the Kingsport Vice and Narcotics Unit conducted another controlled purchase of methamphetamine from Brittany Sage, utilizing a CI. Sage agreed to sell the CI a gram of methamphetamine for $70. Sage again requested the CI come to 735 Howard Street to make the buy. The CI arrived and met with Sage. Sage told the CI that Defendant was not home because he was out trying to help co-defendant Connie Terry because she had been robbed of methamphetamine.

Through the seizure of cellular telephones and text message search warrants, officers obtained and reviewed texts between Defendant and co-defendant Harvey Napier, in which Napier seeks to obtain methamphetamine from Defendant in September 2018. Officers also retrieved text messages between Defendant and co-defendant Connie Terry, in September 2018, in which Defendant agreed to purchase methamphetamine from Terry and told her he had $5,000.00 for the purchase. After that, Defendant and Napier communicated by text message and Defendant agreed to provide Napier with a half-ounce of methamphetamine. Napier agreed to deliver an ounce of methamphetamine for Defendant and retrieve money from Sage for Defendant. In a text communication between Defendant and co-defendant Kirstin Mulkey, Mulkey informed Defendant she was selling methamphetamine for Defendant.

On October 1, 2018, Napier texted Defendant, indicating that he needed an ounce of methamphetamine and that he had provided Sage with two and a half ounces of methamphetamine for defendant.

On October 13, 2018, co-defendant Dustin Barnette texted Defendant and indicated that he had seen Mulkey the previous night to "re-up" referring to obtaining more methamphetamine. On October 14, 2018, co-defendant Bobbie Sue Widener texted Defendant, seeking methamphetamine.

3

On October 16, 2018, agents obtained a search warrant for content of three cellular phones that were in the possession of co-defendant Tyler Denison. October 17, 2018 text messages with Defendant were on the phone, in which Denison discussed methamphetamine he had obtained from Defendant.

Between the dates of October 18, 2018 and October 31, 2018, co-defendant Brittany Sage contacted Defendant from the Sullivan County Jail, where she was incarcerated at the time. Defendant discussed the loss of methamphetamine with Sage.

On January 8, 2019, a search warrant was obtained in Buncombe County, North Carolina for the content of three cellular phones that were found in the possession of Defendant during his arrest in Asheville, North Carolina on December 22, 2018. On January 9, 2019, a search warrant was obtained in Sullivan County, Tennessee for the content of Defendant's cellular phone, found in an abandoned F-350 truck. The phones reflect multiple texts between Defendant and co-defendant Joshua Davis. In the messages, Defendant discusses purchasing methamphetamine from Davis. In one series of messages, Davis discusses taking a trip to pick up methamphetamine. Davis indicates that he planned to purchase three pounds of methamphetamine for $15,000. Davis discusses Defendant riding with him to pick up the methamphetamine from his source.

In November 1, 2018 text messages, co-defendant David Garber sent a text message to Defendant asking if he could get an ounce of methamphetamine.

On November 2, 2018, Defendant sent a text to Joshua Davis, asking if he acquired more methamphetamine. Davis responded and explained he had not because the mother of the source in Georgia passed away and the source was away to attend the funeral. Davis indicated that he could call another source of methamphetamine in Georgia that David Garber use to go to, and that the source was located five miles on the other side of Interstate 85 from where they had been going.

4

Davis asked if Connie Terry had methamphetamine and Defendant told him that her source had been arrested. Davis then contacted Defendant and told him that he was going to get methamphetamine from another person at a rate of $6,500.00 a pound. Defendant told Davis that he wanted two pounds of meth and wanted to know when Davis would return with the meth. Davis texted that he had the meth and he was returning with it. Davis told Defendant that the supplier sold him the meth for $6,250 a pound because they bought four (4) pounds. Davis then told Defendant to meet him at a location off Eastern Star Road, and that he was not coming in to Sullivan County anymore.

On November 3, 2018, Harvey Napier texted Defendant, inquiring about whether they were going to meet up with Davis. Napier sent another text to Defendant, saying that customers were constantly calling his number looking for methamphetamine. Defendant indicated that Davis was supposed to be on his way to them.

On November 4, 2018, Connie Terry texted Defendant to purchase methamphetamine.

On November 7 and 8, 2018, Bobbie Sue Widener arranged to purchase methamphetamine from Defendant by text message.

On November 9, 2018, David Garber contacted Defendant, inquiring about how much methamphetamine he could purchase for $400.

On November 10, 2018, Bobbie Sue Widener texted Defendant, seeking to obtain two of her "usual," referring to methamphetamine.

On November 11, 2018, Defendant sent a text message to Brittany Sage asking her to notify him when she sold the methamphetamine he provided her. Shortly after, Defendant sent a text message to Bobbie Sue Widener, asking if she needed an ounce of methamphetamine. Widener sent a text back to Defendant and asked how much methamphetamine he would sell for $2,000.

5

On November 16, 2018, Defendant indicated that law enforcement had about gotten him, and that he had to flush everything, referring to an incident where the Kingsport Police Department visited Defendant's room at the Americourt Motel.

On November 17, 2018, Brittany Sage texted Defendant and told him that they have deals lined up and requested to know when he would provide the methamphetamine. Sage also indicated that she was upset with the quality of the methamphetamine, stating "*Are u cutting ur stuff now???*"

On November 21, 2018, agents interviewed co-defendant Kirstin Mulkey at the Kingsport Police Department. Mulkey stated that she was dating Defendant, and got her methamphetamine from him. Mulkey stated that Defendant was also dating Brittany Sage and that Sage also got her methamphetamine from Defendant. Mulkey said the smallest amount of methamphetamine Defendant would purchase was a quarter pound. Mulkey stated that Defendant will purchase a kilogram of methamphetamine for $11,000 to $13,500, and sell it in ounce quantities to Kingsport area dealers. Mulkey stated that at the time of the interview, Defendant had approximately one kilogram of methamphetamine in his possession. Mulkey said that Defendant will purchase approximately a pound of methamphetamine every two days. Mulkey stated that Defendant is getting his methamphetamine from Joshua Davis and Nathan Crowe.

On November 23, 2018, a person using (423) 408-4184 text messaged Defendant and stated that they had drug deals for the evening, but needed to be supplied methamphetamine by Defendant to complete the deals. The person told Defendant that they needed a half ounce or a whole ounce of methamphetamine from him. The person said they only had enough money for half ounce of methamphetamine, and asked if Defendant could "front" the other half ounce. The unknown person also told Defendant they would have the methamphetamine sold in two (2) hours and would bring the money back to him.

6

On December 14, 2018, Defendant sent a text message to co-defendant Dustin Barnette, asking him if he was going to pay him back for methamphetamine he previously obtained on the front. Barnette responded that he had Defendant's money. Barnette sent another message telling Defendant that he would be there shortly to pay him back and that he received drug debt money from Tim Parker as well. On the following day, Barnette sent a message to Defendant wanting to meet so that he could obtain more methamphetamine.

On December 21, 2018, co-defendants Adam Bear and Lindsey Krajek texted Defendant to purchase methamphetamine. Krajeck explained that her other source was taking too long and they had customers calling them wanting to purchase methamphetamine.

On December 22, 2018, Defendant was arrested in Asheville, NC with approximately one and one-half pounds of methamphetamine and twenty-nine firearms. Defendant was transported to the Buncombe County Detention Center. Defendant consented to an interview and stated that the methamphetamine he was in possession of at the time of his arrest came from Nathan Crowe. Defendant stated that he met Crowe at a McDonalds in Atlanta, Georgia on December 21, 2018 and purchased the methamphetamine from him for $7,000. Defendant stated that Kirstin Mulkey was with him during the deal. Defendant also stated that he purchased methamphetamine from Joshua Davis. Defendant stated he usually buys one pound of methamphetamine from Davis at a time. Defendant said he had purchased a pound of methamphetamine from Davis more than ten (10) times, and began buying from him within the past year. He said that the most he purchased from Davis at a time was two (2) pounds of methamphetamine.

On December 28, 2018, Defendant was interviewed a second time at the Buncombe County Detention Center. Defendant stated that he met Joshua Davis through Harvey Napier. Defendant said that when he first started buying pounds of methamphetamine from Davis, he would give the

7

money to Napier. Napier would then bring back the meth from Davis. Defendant said that eventually he began dealing directly with Davis. Defendant stated that Davis would frequently change cell phones, so he would contact Davis through Facebook Messenger, and then Davis would call him. Defendant said that he had been purchasing pounds of methamphetamine from Davis since he moved to High Point Ave. until about two weeks prior to his arrest.

Defendant also stated that he had known Connie Terry since 2013. He said that he began purchasing methamphetamine from Terry after his most recent release from the Sullivan County Jail. Defendant said that he would purchase a pound of methamphetamine from Terry every few days. He stated that this occurred until Terry's source was arrested. Defendant stated that he then began to sell methamphetamine to Terry. Defendant stated that he last sold methamphetamine to Terry a few days prior to his arrest.

On March 1, 2019, agents interviewed co-defendant Mark Adam Burke. Burke stated he had purchased methamphetamine from Joshua Davis and Defendant's house.

On March 21, 2019, agents interviewed a confidential source. The confidential source indicated that he/she went with Steven Eisenmenger to Defendant's house on to occasions so that Eisenmenger could obtain methamphetamine.

The defendant admits that he conspired with at least one other person to distribute methamphetamine as charged in the indictment, and that he is responsible for the distribution of at least 500 grams but less than 1.5 kilograms of methamphetamine (actual).

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

8

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the

9

defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means

the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)     If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)     If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.     The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the

offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United

States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

13

<pre>
                              J. DOUGLAS OVERBEY
                              UNITED STATES ATTORNEY

  2/7/2020              By:   _____
Date                          J. GREGORY BOWMAN
                              Assistant United States Attorney

  2/5/20                      _____
Date                          VICTOR JAMES RAY
                              Defendant

  2/5/2020                    _____
Date                          JERRY FABUS, JR.
                              Attorney for the Defendant
</pre>

14